<u>**UNITED STATES DISTRICT COURT**</u>

**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Tracy Lavoie**</u>

     v.                             Civil No. 15-cv-209-PB

                                            Opinion No. 2016 DNH 107

<u>**US Social Security Administration**</u>
<u>**Acting Commissioner, Carolyn Colvin**</u>

<u>**MEMORANDUM AND ORDER**</u>

Tracy Lavoie is a forty-four year old woman with a history of numerous impairments, including fibromyalgia, major depressive disorder, anxiety, carpal tunnel syndrome, breathing-related disorders, and headaches.  Lavoie previously worked as a bus driver, bus monitor, cashier, crossing guard, and babysitter.  Here, Lavoie challenges the Social Security Administration's denial of her claim for disability insurance benefits.  The Social Security Commissioner, in turn, seeks to have the ruling affirmed.

## I. <u>BACKGROUND</u>

In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 17).  Because that joint statement is part of the court's record, I

need not recount it here.  I discuss facts relevant to the
disposition of this matter as necessary below.

## II.  <u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), I have the authority to
review the administrative record and the pleadings submitted by
the parties, and to enter judgment affirming, modifying, or
reversing the final decision of the Commissioner.  That review
is limited, however, "to determining whether the [Administrative
Law Judge] used the proper legal standards and found facts
[based] upon the proper quantum of evidence."  Ward v. Comm'r of
Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the
Administrative Law Judge's (ALJ's) findings of fact, so long as
those findings are supported by substantial evidence.  Id.
Substantial evidence exists "'if a reasonable mind, reviewing
the evidence in the record as a whole, could accept it as
adequate to support his conclusion.'"  Irlanda Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per
curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs.,
647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's
factual findings are conclusive, even where the record "arguably
could support a different conclusion."  Id. at 770.  Findings

are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III.  ANALYSIS

Lavoie filed for disability insurance benefits in June 2011, alleging disability as of June 10, 2011.  Doc. No. 17 at 1.  After her application was initially denied, a hearing was held before an administrative law judge ("ALJ") in April 2013. Id.  The ALJ denied Lavoie's application in July 2013.  Id. After an appeal, however, the Appeals Council remanded Lavoie's case in November 2013.  Id.  The ALJ held a second hearing in May 2014, but again denied Lavoie's application.  Id.  In July 2014, after another appeal, the Appeals Council remanded the matter a second time.  Id.  A different ALJ held another hearing in December 2014, at which Lavoie, Lavoie's husband, a medical expert, and a vocational expert testified.  The ALJ then issued a written decision, concluding that Lavoie was not disabled.

Tr. at 60-77 (the ALJ's decision).

In her written decision, the ALJ evaluated Lavoie's claims under the five step process outlined in 20 C.F.R. § 404.1520(a)(4).  At step one, the ALJ found that Lavoie had not engaged in substantial gainful activity since June 10, 2011, her alleged onset date.  Tr. at 62.  The ALJ determined at step two that Lavoie had severe impairments of fibromyalgia, diabetes mellitus, left carpal tunnel syndrome, breathing-related disorder, and headaches, but also concluded that Lavoie's major depressive disorder was not a severe impairment.  Tr. at 62-63. At step three, the ALJ found that Lavoie's impairments did not meet or equal any of the listed impairments.  Tr. at 65-66. Then, after calculating Lavoie's residual functional capacity, the ALJ determined at step five that Lavoie was able to perform jobs that exist in significant numbers in the national economy. Tr. at 66-67, 76-77.  The ALJ therefore concluded that Lavoie was not disabled.  Tr. at 77.

In May 2015, the Appeals Council denied Lavoie's request to review the ALJ's decision.  Tr. at 1.  As such, the ALJ's decision constitutes the Commissioner's final decision, and this matter is now ripe for judicial review.

Here, Lavoie argues that a remand is required for four principal reasons: (1) the ALJ did not properly analyze her

4

depression, (2) the ALJ did not evaluate her fibromyalgia appropriately, (3) the ALJ improperly weighed opinion evidence, and (4) the ALJ's step-five determination was not supported by substantial evidence.  Lavoie's first argument is persuasive, and warrants a remand.

Lavoie claims that the ALJ made two errors in analyzing her depression.  Lavoie argues that the ALJ erred in concluding, at step two, that her depression was a non-severe impairment.  She further contends that the ALJ erred by failing to consider her depression throughout the remainder of the sequential analytic process.  I take up each issue in turn.

**A.    Step Two Analysis Regarding Depression**

In this case, the ALJ determined that Lavoie's fibromyalgia, diabetes mellitus, left carpal tunnel syndrome, breathing-related disorder, and headaches were severe impairments.  Tr. at 62.  The ALJ also determined, however, that Lavoie's depression was not a severe impairment, because it imposed no more than minimal limitations on her ability to perform basic work activities.  Tr. at 63.  Lavoie challenges this conclusion.

Although the parties devote significant attention to this issue, I need not decide whether the ALJ erred by concluding that Lavoie's depression was non-severe at step two.  Instead,

"[t]his court has consistently held . . . that an error in describing a given impairment as non-severe is harmless so long as the ALJ found at least one severe impairment and progressed to the next step of the sequential evaluation." Chabot v. U.S. Soc. Sec. Admin., 2014 DNH 067, 23; see SSR 85-28, 1985 WL 56856, at *3 (differentiating claims denied at step two from those where "adjudication . . . continue[s] through the sequential evaluation process").

Had Lavoie's claim rested solely on her depression, then the ALJ arguably should have deemed that impairment severe, and moved to the next step of the sequential evaluation process. See Chabot, 2014 DNH 067, 23-24. But where, as here, the ALJ found other severe impairments, her decision to treat Lavoie's depression as non-severe was, at most, harmless error, so long as she properly evaluated all of Lavoie's impairments in determining whether she was disabled. See Hines v. Astrue, No. 11-CV-184-PB, 2012 WL 1394396, at *12-13 (D.N.H. Mar. 26, 2012). The appropriate inquiry, then, is whether the ALJ adequately addressed Lavoie's depression after step two.

## B. **Consideration of Depression After Step Two**

Lavoie argues that the ALJ's alleged error at step two was not harmless because, she claims, the ALJ failed to consider her depression in combination with her other impairments, both at

step three, and when calculating her residual functional

capacity ("RFC").  See Doc. No. 10-1 at 8.  To analyze this

issue, I begin with the relevant legal framework, and then

consider the facts of Lavoie's case.

    1.  Legal Framework

    In assessing whether a claimant is disabled, an ALJ must

consider "the combined effect of all of a claimant's

impairments," regardless of whether those impairments are

classified as "severe."  McDonald v. Sec'y Health & Human

Servs., 795 F.2d 1118, 1126 (1st Cir. 1986); see 42 U.S.C. §

423(d)(2)(B); 20 C.F.R. 404.1523.  It is "simply a matter of

common sense that various physical, mental, and psychological

defects, each nonsevere in and of itself, might in combination,

in some cases, make it impossible for a claimant to work."

McDonald, 795 F.2d at 1127.  An ALJ must therefore "consider the

combined effect of all of [a claimant's] impairments without

regard to whether any such impairment, if considered separately,

would be of sufficient severity."  20 C.F.R. 404.1523; see SSR

96-8P, 1996 WL 374184, at *5 (July 2, 1996).  And, although an

ALJ has "considerable latitude in how" she considers non-severe

impairments, Chabot, 2014 DNH 067, 25, she may "not disregard

individual, non-severe impairments where the claimant's

collective impairments are severe," Forni v. Barnhart, 2006 DNH

120, 23.

Applying these principles, I concluded in <u>Forni v. Barnhart</u>, 2006 DNH 120, that the ALJ's failure to consider a claimant's depression in combination with his other impairments warranted a remand.  In that case, the ALJ determined that the claimant's "mental impairment was not severe but that his asthma and carpal tunnel syndrome were severe."  <u>Forni</u>, 2006 DNH 120, 23.  The ALJ "then completely (and improperly) dropped Forni's depression from his analysis, thereafter analysing only the effects of asthma and carpal tunnel on" the claimant's RFC.  <u>Id.</u> Because the ALJ did not address the claimant's impairments in combination "throughout the sequential analysis," I found that his decision was not supported by substantial evidence.  <u>Id.</u> at 24.

Judge McCafferty recently reached a similar conclusion in <u>Morse v. Colvin</u>, 2015 DNH 055.  In <u>Morse</u>, the ALJ determined at step two that the claimant's depression, panic disorder, and sleep apnea were non-severe impairments, and did not address those impairments thereafter.  <u>Morse</u>, 2015 DNH 055, 18. Instead, at step three, the ALJ stated that "none of [the claimant's] three severe impairments individually met or equaled the severity of a listed impairment, but did not address the combination of those three impairments or even mention [the

claimant's] non-severe impairments."  Id.  Then, as in Forni,
the ALJ "said nothing at all about [the claimant's] non-severe
impairments in his discussion of [the claimant's] RFC."  Id.
According to the court, this apparent failure to consider the
claimant's non-severe impairments after step two warranted a
remand.  Id. at 23; see Walker v. Bowen, 889 F.2d 47, 50 (4th
Cir. 1989) ("[T]he ALJ must adequately explain his or her
evaluation of the combined effects of the impairments.");
Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985)
(remanding where the ALJ "failed to provide adequate explanation
to show that he had considered the combined effect of the
impairments so as to allow proper judicial review"); see also
Stephenson v. Halter, No. CIV. 00-391-M, 2001 WL 951580, at *2
(D.N.H. Aug. 20, 2001).

    2.  Application

The ALJ's decision here suffers the same deficiencies as
the decisions at issue in Forni and Morse.  In this case, the
ALJ determined at step two that Lavoie's depression was not a
severe impairment.  Then, at step three, the ALJ discussed each
of Lavoie's severe impairments -- fibromyalgia, diabetes, carpal
tunnel syndrome, breathing disorders, and headaches -- but did
not discuss Lavoie's depression in combination with her

fibromyalgia.[1]  Tr. at 65-66.  And, like in <u>Forni</u> and <u>Morse</u>, the ALJ did not analyze Lavoie's depression in calculating her RFC. Tr. at 66-75.  Instead, the RFC assessment included an extended discussion of the medical evidence, and Lavoie's credibility concerning, her "severe" impairments, but not her depression.[2] Tr. at 66-75.  The ALJ's decision thus suggests that she impermissibly dropped Lavoie's depression from her analysis in calculating Lavoie's RFC, and only considered Lavoie's "severe" impairments at that point.

The Commissioner nonetheless makes several arguments in defense of the ALJ's decision.  First, the Commissioner asserts that the ALJ's analysis at step three implies that she adequately considered Lavoie's depression.  Doc. No. 12-1 at 13-14.  Although the ALJ certainly mentioned Lavoie's depression at step three, Tr. at 65-66, the Commissioner also concedes that

---

[1] Fibromyalgia is frequently associated with depression. <u>See</u> SSR 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012). "Fibromyalgia patients who suffer with depression tend to be less active, resulting in increased pain and suffering." Barnes v. Astrue, No. 07-2141, 2008 WL 5210753, at *3 (W.D. Ark. Dec. 10, 2008).  For that reason, courts often remand cases where the ALJ does not address the combined effects of a claimant's fibromyalgia and depression.  <u>See</u> <u>id.</u>; <u>see also</u> Hazelton v. Astrue, No. 4:08-2767-TER, 2010 WL 1052840, at *5 (D.S.C. Mar. 19, 2010).

[2] The word "depression" appears once in the ALJ's ten-page RFC analysis, and only in the context of the ALJ summarizing a single treatment note.  <u>See</u> Tr. at 72.

"the ALJ did not specifically indicate that she was considering" Lavoie's depression and fibromyalgia in combination.  Doc. No. 12-1 at 14.  Moreover, a "boilerplate assertion[]" that an ALJ considered all of the claimant's impairments in combination, "without describing any actual analysis," is insufficient. Morse, 2015 DNH 055, at 20.

Second, the Commissioner claims that the ALJ's RFC determination shows that she considered Lavoie's depression after step three.  See Doc. No. 12-1 at 15.  More specifically, the Commissioner argues that the ALJ "included mental restrictions" in Lavoie's RFC, id. at 15, like limiting Lavoie to uncomplicated tasks, and requiring "an environment without strict production quotas, such as those found on a factory assembly line."  Tr. at 67.  According to the Commissioner, these restrictions show that the ALJ contemplated Lavoie's non-severe impairments in calculating her RFC.

This argument is also unpersuasive.  The ALJ did not expressly connect these restrictions to Lavoie's depression in her decision, and the cited limitations apparently stem from the medical expert's testimony at Lavoie's December 2014 hearing. See Tr. at 156-215 (hearing transcript); cf. Shaw, 2011 DNH 213, 10-11 (reviewing hearing transcript in considering whether ALJ's failure to discuss a mental impairment in his RFC determination

11

was harmless).  When asked to describe Lavoie's functional limits, the medical expert testified that "on two [inaudible], the basis of the fibromyalgia as well as the neuropathy involving her lower extremities we would want this to have a low stress situation, both physically and emotionally . . . ."  Tr. at 194.  The expert went on to express his opinions regarding Lavoie's physical limitations -- her ability to stand, sit, lift, reach, climb stairs, her need to change positions, etc. He later clarified that he was "not including the impact of the psychological factors [in his analysis] because I'm not a psychiatrist . . . ."  Tr. at 201.

The limitations cited by the Commissioner therefore seem to relate to Lavoie's fibromyalgia, a severe impairment, and the neuropathy in Lavoie's lower extremities; but not her depression.  The ALJ's summary of the medical expert's testimony -- that the expert had "testified that [Lavoie] could perform work largely as described in the above residual functional capacity given the identified medically determinable <u>severe impairments</u>," Tr. at 74 (emphasis added) -- corroborates this conclusion, because it explicitly connects the RFC assessment to Lavoie's "severe impairments," but not to her (non-severe) depression.  The record thus does not support the Commissioner's claim that the RFC determination reflects Lavoie's depression.

Finally, the Commissioner argues that Lavoie has not shown that the ALJ's purported error resulted in any harm.  See Doc. No. 12-1 at 14-15.  Lavoie claims that the ALJ's failure to address her depression after step three caused harm, because the "RFC determination does not reflect any functional limitations related to this mental impairment."  Doc. No. 10-1 at 8.

Although the Commissioner is right that Lavoie has the burden of establishing that an ALJ's step two error caused harm, Chabot, 2014 DNH 067, 26, it is equally true that an ALJ must "provide adequate explanation to show that he had considered the combined effect of the impairments so as to allow proper judicial review," Reichenbach, 808 F.2d at 312.  In this case, where the ALJ did not address Lavoie's depression in calculating her RFC, and the record instead suggests that the ALJ dropped Lavoie's non-severe impairments from consideration in calculating Lavoie's RFC, the ALJ's analysis fell short of this standard.  Cf. Morse, 2015 DNH 055, 23.  The ALJ's decision therefore is not supported by substantial evidence, and this case must be remanded for further consideration.

## IV.  CONCLUSION

For the foregoing reasons, I deny the Commissioner's motion to affirm (Doc. No. 12) and grant Lavoie's motion to reverse

(Doc. No. 10).  Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this Memorandum and Order.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


June 24, 2016

cc:   Janine Gawryl, Esq.
      Robert Rabuck, Esq.